IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

MACKENZIE D. W., )
)
    Plaintiff, )
)
                                                  ) Case No. 17-CV-319-JFJ
v. )
)
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
)
    Defendant. )

**OPINION AND ORDER**

Plaintiff Mackenzie D. W. seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i) and 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.    Standard of Review**

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to

determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1261 (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands so long as it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and ALJ's Decision

Plaintiff, then a 46-year-old female, protectively applied for Title II benefits on July 20, 2012, alleging a disability onset date of January 1, 2009. R. 238-239. Plaintiff met the insured status requirements of the Act through December 31, 2015. R. 22. Plaintiff claimed she was unable to work due to fibromyalgia and related pain, cluster headaches, memory loss, osteopenia, poor eye sight, "unable to sit, stand, or walk for long periods of time," and "no heavy lifting." R. 265. Plaintiff's claim for benefits was denied initially on December 19, 2012, and on reconsideration on March 27, 2013. R. 125-129; 131-133. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held an initial hearing on October 10, 2013. The ALJ then issued a decision, finding at step four that Plaintiff could return to her past relevant work as a court clerk and a waitress, and therefore was not disabled. R. 103-112. Plaintiff appealed, and the Appeals Council remanded that decision to the ALJ to resolve issues surrounding Plaintiff's residual functional capacity ("RFC") and her past relevant work. R. 116-120. Plaintiff received a second hearing on November 24, 2015. R. 40-63. Due to reported work activity well after her January 1, 2009, alleged onset date, Plaintiff amended her alleged onset date to July 31, 2010, on the advice of her attorney.[1] R. 45-46.

---

[1] At certain places in the ALJ's decision, this July 31, 2010 date is erroneously recorded as July 31, 2015. This was merely a scrivener's error, and neither party disputes that the proper amended onset date is July 31, 2010.

2

After Plaintiff's second hearing, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since her amended alleged onset date, July 31, 2010. R. 23. The ALJ found Plaintiff had the severe impairments of fibromyalgia and somatoform disorder. *Id.* Plaintiff's non-cardiac chest pain, intermittent bradycardia, degenerative joint disease in her hand, and depression were all medically determinable, non-severe impairments, and Plaintiff's complaints of headaches and memory loss were found to be non-medically determinable impairments "that appear[ed] to be symptoms of her fibromyalgia" instead of independent diagnoses. R. 24. Plaintiff's impairments did not meet or medically equal any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ discussed Social Security Ruling ("SSR") 12-2p, Evaluation of Fibromyalgia,[2] and listing 12.07 for somatoform disorders, finding that Plaintiff had mild restriction in activities of daily living, no difficulties in social functioning, moderate difficulties regarding concentration, persistence, or pace, and no episodes of decompensation. R. 25.

Prior to making a step four finding and after "careful consideration of the entire record," the ALJ found that Plaintiff retained the RFC to

> perform light work as defined in 20 CFR 404.1567(b) that is: the claimant can occasionally lift/carry and push/pull 20 pounds occasionally. The claimant can lift/carry and push/pull 10 pounds frequently. She can stand/walk 6 hours in an 8-hour workday with normal breaks and sit 6 hours in an 8-hour workday with normal breaks. She is limited to simple unskilled work. She can relate to coworkers, supervisors, and the general public. She would work primarily at the simple unskilled level. She has symptomology from a variety [of] sources to include mild to moderate to occasional and chronic pain that is sufficient severity to be noticeable to her but would remain attentive and responsive to carry out normal work assignments satisfactorily. The claimant is taking medication but it would not preclude her from remaining reasonably alert to perform functions presented in a work setting.

---

[2] There is not a specific listing for fibromyalgia. *See* SSR12-2p, 2012 WL 3104869, at *6.

3

R. 26. In making his RFC decision, the ALJ summarized Plaintiff's hearing testimony from both hearings. The ALJ noted that in 2013, Plaintiff stated she quit her job as a court clerk and worked as a disc jockey once a month for six months. R. 26. Plaintiff testified to short-term memory loss and sleep problems, and claimed to have low energy and needed to nap during the day. Plaintiff testified she could stand for thirty minutes, walk ten to fifteen minutes at a time, and lift approximately ten pounds. In 2015, Plaintiff testified that her most severe impairment was fibromyalgia and the resultant pain from it; however, she only used over-the-counter pain relievers such as Tylenol and Advil for the pain, and only took a generic form of Zoloft. R. 27. Plaintiff stated she was first diagnosed with fibromyalgia in 2009, continued to work as a court clerk until July 31, 2010, and stopped working due to medication side effects. *Id.* Plaintiff testified to painful fingers, problems gripping, difficulty with focus, and memory loss. *Id.* Plaintiff stated she "cannot rest at night" and is fatigued, napping two to two and a half hours daily. *Id.* She claimed she drove only two or three times a month, could lift twenty pounds, could sit in a reclined position, could stand twenty to thirty minutes, and could walk for thirty minutes. *Id.*

In his RFC discussion, the ALJ discussed all of Plaintiff's medical records at length, ranging from June 15, 2009, to September 16, 2013, including records from Plaintiff's treating physicians, emergency treatment records, two agency consultative examinations, and non-examining agency opinions. R. 27-31; 85-92, 94-102, 356-438, 439-503, 504-512, 513-519, 524-526, 527-623. Records from Plaintiff's treating physician, Helen Franklin, M.D. of Omni Medical Group, dated July 1, 2010, noted multiple tender spots and a diagnosis of myalgia myositis. A subsequent visit to Dr. Franklin on August 18, 2010, revealed Plaintiff's report that "her fibromyalgia symptoms were much better on her medication regimen." R. 27. Yet on September 2, 2010, Plaintiff requested new medication for fibromyalgia, stating that she was "self-medicating herself with THC and wanted to get some THC pills," and reportedly had an upcoming drug test

4

for her job. R. 27-28. Plaintiff had multiple positive tender points, and Dr. Franklin again diagnosed fibromyalgia. R. 28. On March 17, 2011, Plaintiff requested a letter from Omni Medical Group documenting her fibromyalgia diagnosis for a workers' compensation claim on March 17, 2011. R. 28. Further notes from Dr. Franklin on January 18, 2012, reveal Plaintiff's claim of stable fibromyalgia symptoms, and that Plaintiff was "in the process of a building job and was working PRN as a DJ." *Id.* Plaintiff was in no acute distress, and Dr. Franklin diagnosed tobacco use disorder, fibromyalgia, insomnia, and osteopenia. *Id.*

The ALJ next discussed Plaintiff's physical and mental CEs with Johnson Gourd, M.D., and Timothy Doty, Ph.D. R. 28-29; 504-511, 513-517. Dr. Gourd performed a physical CE of Plaintiff on November 5, 2012. R. 504-511. Plaintiff complained of fibromyalgia, headaches, anxiety, and problems with her hearing and memory. She denied any history of alcohol or recreational drug use. R. 28; 504. Dr. Gourd's examination revealed that Plaintiff had "5/5 graded strength in all of her extremities and full painless range of motion in all extremities." R. 28; 505. Plaintiff could oppose her thumb and fingertips, manipulate small objects, and grasp tools such as a hammer. R. 28; 510. Plaintiff's straight leg raise test was negative bilaterally, and she could heel toe walk without difficulty. R. 28; 505. Plaintiff's gait was stable without any assistive devices and she walked at an appropriate speed, and she could stand from a seated position without difficulty. R. 28; 505. Dr. Gourd assessed Plaintiff with 18/18 tender fibromyalgia points "per history" "on subjective testing." R. 28; 505.

The ALJ gave great weight to the majority of Dr. Gourd's opinion, only discounting his finding of 18/18 tender fibromyalgia points. R. 28. The ALJ explained that such finding was "inconsistent with [Plaintiff's] treatment records by her primary care physician [Dr. Franklin]" who found multiple, but not all, tender points. *Id.* Further, that finding was also inconsistent with Dr. Gourd's other findings of no limitations with Plaintiff's extremities on testing. *Id.* Finally,

5

the ALJ discounted that particular finding by Dr. Gourd, because it rested solely on Plaintiff's recounted history and her subjective complaints. *Id.* The ALJ found Plaintiff's "record has included multiple inconsistencies, which [left] her with very little credibility with subjective complaints." *Id.*

The ALJ next turned to Dr. Doty's December 2, 2012, mental CE. R. 28-29; 513-517. Plaintiff presented to the examination with complaints of fibromyalgia and told Dr. Doty she was prescribed Paroxetine (Paxil) "for her depressed mood and only attended three therapy sessions after it was recommended she seek therapy to help her mood." *Id.* Plaintiff ambulated without issue, was pleasant, cooperative, and euthymic during her examination. *Id.* Dr. Doty administered a Montreal Cognitive Assessment (MoCA) test, and Plaintiff earned 29 of 30 possible points, only missing one point on delayed recall.[3] Plaintiff's fund of knowledge was average, her associations were relevant, and her memory and concentration were unimpaired. R. 28; 514. Plaintiff's affective range was within normal limits and her mood was euthymic. Dr. Doty assessed Plaintiff with pain disorder associated with psychological factors, fibromyalgia, and assigned Plaintiff a GAF score of 68. R. 29; 514. Dr. Doty opined that Plaintiff's ability to engage in work related mental tasks was "unimpaired," her memory performance was "unproblematic," but that Plaintiff's "ability to sustain concentration in a real-world situation appeared hindered by physical pain." R. 29; 514. Dr. Doty further opined that Plaintiff's "ability to persist in work related tasks appears reduced by reported physical limitations." R. 29; 514. Plaintiff's ability to "socially interact and adapt to the demands of work situations was within normal limits." R. 29; 514.

The ALJ afforded great weight to Dr. Doty's opinion that Plaintiff's ability to understand and remember work related mental tasks was "unproblematic." However, the ALJ afforded little

---

[3] A normal score is equal to or above 26. R. 28; 514.

weight to Dr. Doty's opinions of Plaintiff's concentration and her ability to persist in work related tasks. R. 29. The ALJ explained, stating:

> [Dr. Doty's] finding the claimant's ability to sustain concentration in a real-world situation appeared hindered by physical pain is given little weight because it is not consistent with her almost perfect score on her MoCA, his GAF of 68, and his opinion that her ability to engage in work related mental activities appeared unconcerning is not consistent. This was considered in her RFC as evidenced by limiting her to simple work. In addition, his opinion that claimant's ability to persist in work related task[s] because of her reported pain would be reduced is given little weight because Dr. Doty based his opinion on the claimant's reported physical limitations and is inconsistent with other examinations in the file (2F, 3F, and 5F).

R. 29.

The ALJ then discussed Plaintiff's final set of medical records. Plaintiff presented to Omni Medical Group on September 16, 2013, with complaints of increased fibromyalgia pain. R. 29; 524-526. Plaintiff complained of pain "all over" but stated it was "worse in her bilateral thumbs." R. 29. Plaintiff reported that she went to bed by 11:00 p.m., fell asleep quickly, arose at 9:00 a.m., did not nap during the day, and her insomnia was controlled with Amitriptyline. *Id.* An x-ray was ordered for Plaintiff's right hand the same day, and it revealed "advanced degenerative joint disease at the right first carpal metacarpal articulation was present with mild changes at the second carpal metacarpal articulation and minimal DJD involving DIP joints." R. 29; 526. "No acute or additional significant osseous abnormalities" were seen. R. 526.

Next, the ALJ engaged in a thorough discussion of Plaintiff's credibility, including discussion of whether Plaintiff's subjective complaints of disabling pain from her fibromyalgia were consistent with the medical and non-medical evidence. The ALJ found that the "dichotomy between [Plaintiff's] allegations and the evidence of record as a whole reflects poorly on her credibility." R. 29. The ALJ listed at least six specific instances of inconsistencies with citations to specific evidence, including contrasting Plaintiff's complaints of sleep problems and pain with medical records and her reported activities and her allegations that her medication caused an

7

inability to function with treatment records indicating improvement and stability of symptoms on her current medication regimen. R. 29-30. The ALJ also discussed her limited treatment for her fibromyalgia:

> The claimant has very limited medical treatment for her fibromyalgia in 2013, 2014, and 2015, (2F and 5F) despite her allegations that it was extremely debilitating to the point she was no longer able to work. In fact, her recent medical treatment submitted on November 20, 2015, does not reflect she received any treatment since June 2014 (22E).[4] Her sporadic medical treatment greatly decreases her credibility. Finally, the claimant testified her initial onset date in 2009 was based on her fibromyalgia diagnosis. However, the record reflects the claimant was not diagnosed until July 1, 2010, which was specifically stating because she was requesting a letter for a workers compensation case (2F). This causes serious questions about her overall credibility.

*Id.* (footnote added).

The ALJ gave little weight to agency doctors' findings that Plaintiff had no severe physical impairments, because Plaintiff's medical records show that she was "diagnosed and received sporadic treatment for fibromyalgia." R. 30. The ALJ gave the agency psychological consultant's findings "some weight" because Plaintiff's "activities of daily living are not limited based on [Plaintiff's] self-reported function report (4E). In addition, testing found [Plaintiff] would have moderate limitation with maintaining concentration due to pain (4F), which have been accounted for by limiting [Plaintiff] to simple work." R. 30. The ALJ also noted a third party function report completed by Plaintiff's husband, but gave it little weight because it conflicted with Plaintiff's own function report and her testimony, and because "the possibility always exists that a significant other may express an opinion in an effort to assist a claimant with whom [he] sympathizes for one reason or another." R. 31.

---

[4] Plaintiff submitted a "Recent Medical Treatment" form at Exhibit 22E listing St. John Clinic in Claremore, Oklahoma, as a treating source but did not submit any additional medical records for review prior to her second hearing on November 24, 2015. Plaintiff's attorney stated at that hearing that the record was complete and did not request time to submit additional records, nor were any additional records submitted to the Appeals Council for their consideration. R. 42-43; 1-6.

At step four, the ALJ found Plaintiff unable to perform any of her past relevant work because it exceeded her RFC. *Id.* Plaintiff was 44 years old on her alleged onset date, which is defined as a younger individual.[5] Based on testimony from the vocational expert, the ALJ found at step five of the sequential evaluation process that Plaintiff acquired the transferrable skills of data entry, filing, and record keeping from her past relevant work as a court clerk. Further relying on testimony from the vocational expert, the ALJ found at step five that Plaintiff could perform the representative jobs of (1) Mail Clerk (DOT 209.687-026) – light exertional level, unskilled, SVP of 2, (2) Light Production Inspector (DOT 712.684-050) – light exertional level, unskilled, SVP of 2, (3) Order Clerk (DOT 209.567-014) – sedentary exertional level, unskilled, SVP of 2, and (4) Production Assembler (DOT 715.687-094) – sedentary exertional level, SVP of 2. R. 32. The ALJ found that Plaintiff was "not under a disability, as defined by the Social Security Act, at any time from July 31, [2010], through the date of this decision. *Id.* The Appeals Council denied review, and Plaintiff appealed. R. 1-5; ECF No. 2.

**III.   Issues and Analysis**

The Court construes Plaintiff's brief as raising two errors on appeal: (1) the ALJ erred by failing to order a consultative examination ("CE") by a pain specialist to evaluate Plaintiff's fibromyalgia symptoms, and the ALJ's RFC is therefore not supported by substantial evidence;[6] and (2) the ALJ's credibility findings are not supported by substantial evidence.

---

[5] The ALJ states that Plaintiff was 49 on her alleged onset date of July 31, 2010, but this is a scrivener's error. Plaintiff's date of birth is February 13, 1966, which makes her age on July 31, 2010, 44 years. Either way, the ALJ's conclusion is correct that Plaintiff is defined as a "younger individual age 18-49." *See* 20 C.F.R. 404.1563.

[6] Plaintiff asserted four total allegations of error. ECF No. 20 at 4. Because the first, second, and fourth allegations of error substantially overlap and turn on the same central issue of whether the ALJ erred in assessing Plaintiff's RFC without obtaining a pain CE, the Court addresses them together in the first allegation of error above.

9

### A. ALJ Did Not Err by Failing to Order Additional CE, and RFC is Supported by Substantial Evidence

"The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (quoting *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360–61 (10th Cir.1993)). "This is true despite the presence of counsel, although the duty is heightened when the claimant is unrepresented." *Id.* "The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts." The ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning;" instead, the "standard is one of reasonable good judgment." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997).

An ALJ may elect to develop the record by obtaining a CE. *See* 20 C.F.R. § 404.1519a (explaining that "[w]e may purchase a [CE] to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim" and providing examples of instances that may require a CE); 20 C.F.R. § 404.1512(b)(2) ("Generally, we will not request a [CE] until we have made every reasonable effort to obtain evidence from your own medical sources."). A CE "is often required" where (1) there is a direct conflict in the medical evidence requiring resolution, (2) the medical evidence in the record is inconclusive, or (3) additional tests are required to explain a diagnosis already contained in the record. *Hawkins*, 113 F.3d at 1166. The Tenth Circuit has held that an "ALJ should order a [CE] when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the [CE] could reasonably be expected to be of material assistance in resolving the issue of disability." *Id.* at 1169. Where a claimant is represented by counsel at the hearing but fails to request a CE, the ALJ does not have a duty to obtain one, "unless the need for one is clearly

established in the record." *Id.* at 1168. Generally, an ALJ has "broad latitude in ordering consultative examinations." *Id.* at 1166.

Plaintiff's counsel did not request that the ALJ obtain a pain CE in addition to the physical CEs already conducted by Dr. Gourd and Dr. Doty. Thus, the need for the CE must be clearly established in the record. Upon careful review of the ALJ's decision and underlying record, the Court concludes that the need for the ALJ to obtain a pain CE is not "clearly established," and the Court rejects all arguments made by Plaintiff in support of this allegation of error.

First, the Court rejects Plaintiff's argument that a pain CE was necessary to resolve a conflict between state agency physicians' opinions that Plaintiff had no severe physical impairments, *see* R. 85-92; 94-102, and the opinion of Dr. Gourd that Plaintiff had fibromyalgia with 18/18 tender points, *see* R. 504-511. Assuming these opinions are inconsistent, the ALJ afforded the greatest weight to Dr. Gourd's opinion by accepting his diagnosis of fibromyalgia and classifying it as a severe impairment. The ALJ resolved any conflict in Plaintiff's favor when he adopted the majority of Dr. Gourd's opinion, listed fibromyalgia as one of Plaintiff's severe impairments, and proceeded with the five-step sequential disability analysis. This identified "inconsistency" does not support Plaintiff's position or necessitate use of a pain specialist.

Although not well developed, Plaintiff's principal complaint regarding the ALJ's treatment of Dr. Gourd's opinion appears to be the reduced weight he afforded Dr. Gourd's assessment of 18/18 tender points. ECF No. 20 at 6. Specifically, the ALJ gave "some but not great weight" to such assessment, because (1) it was inconsistent with treatment records by Dr. Franklin, Plaintiff's primary care physician; (2) it was inconsistent with Dr. Gourd's own finding of no limitations on extremities; (3) it was based on Plaintiff's subjective reports of pain; and (4) Plaintiff's record had multiple inconsistencies, "leaving her with very little credibility with subjective complaints." R. 28. Contrary to Plaintiff's argument, the ALJ properly weighed Dr. Gourd's opinion. An ALJ is

11

entitled to credit parts of an opinion without crediting the entire opinion. *See Smith v. Colvin*, 821 F.3d 1264, 1268 (10th Cir. 2016) (affirming where ALJ "arrived at an assessment between the two medical opinions without fully embracing either one"); *Butler v. Astrue*, 410 F. App'x 137, 143 (10th Cir. 2011) (affirming where ALJ gave significant weight to examining physician's functional test results but gave no weight to examining physician's opinion that the plaintiff could not sustain full-time work); *Turner v. Colvin*, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"). In the context of assessing the intensity and persistence of Plaintiff's symptoms, *see generally* 20 C.F.R. 404.1529(c), the ALJ cited to evidence in Plaintiff's treating source records, along with Dr. Gourd's own normal findings on all other objective tests, to discount Dr. Gourd's acceptance of Plaintiff's subjective tender point complaints. *See* R. 28. Plaintiff has failed to show any conflicting evidence, or other errors in the ALJ's assessment of Dr. Gourd's opinion, that would warrant further development of the record regarding functional limitations resulting from Plaintiff's fibromyalgia.

Second, the Court rejects Plaintiff's arguments premised on Social Security Ruling ("SSR") 12-2p, 2012 WL 3104869, which relates specifically to fibromyalgia. SSR 12-2p "describe[s] the evidence we need to establish a [medically determinable impairment] of [fibromyalgia] and explain[s] how we evaluate this impairment when we determine whether the person is disabled," and it provides that an ALJ "may" purchase a CE to help "assess the severity and functional effects of medically determined [fibromyalgia]." *Id.* at *1, 4. Notably, the ALJ did obtain a CE to evaluate Plaintiff's physical impairments, including fibromyalgia, and the ALJ fully considered Dr. Gourd's opinion along with other evidence in determining the functional limitations resulting from fibromyalgia. The ALJ cited SSR 12-2p and explained that he considered "the medical record and the claimant's testimony in conjunction with the work required." R. 24.

Contrary to Plaintiff's arguments, the ALJ did not have a duty to rely on a pain specialist's opinion, or other medical opinion, to determine Plaintiff's RFC. Instead, the ALJ properly relied on all medical and non-medical evidence in the record in determining Plaintiff's RFC. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (explaining that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question"); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("The ALJ, not a physician, is charged with determining a claimant's RFC."); 20 C.F.R. § 404.1527(d)(2) (explaining that, while an ALJ considers medical opinions in assessing RFC, the final responsibility for determining an RFC is reserved to the ALJ). The burden to fully develop the record was met in this case, and the ALJ had more than sufficient information to make his disability determination based on the two CEs, treating records, and other evidence. *See generally Cowan*, 552 F.3d at 1187 (finding "no need" to develop record with CE because "sufficient information existed" for ALJ to make disability determination).

Third, the Court rejects any argument based on Program Operations Manual ("POMS") DI § 22510.011, which instructs ALJs on the use of "pain specialists." Even assuming the specific provision cited by Plaintiff apples in this case, which the Commissioner disputes, it only instructs to obtain a pain CE if the "necessary evidence . . . is not otherwise available from medical sources of record, the claimant, and others." *See* POMS DI § 22510.011(C)(2). Review of the ALJ's decision makes clear that he fully developed the record regarding the functional limitations created by Plaintiff's pain, based on other medical evidence in the record and Plaintiff's testimony.

Finally, to the extent Plaintiff argues the RFC assessment is not supported by substantial evidence, or that the ALJ failed to analyze the evidence in accordance with SSR 12-2p, the Court also rejects these arguments. SSR 12-2p explains that the reliability of a person's statements regarding the effects of fibromyalgia's symptoms on functioning is evaluated using the same

considerations in other cases. SSR 12-2p at *5 ("If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record . . . ."). Here, the ALJ relied on Dr. Gourd's physical examination findings that showed a lack of functional deficits and, notwithstanding Plaintiff's reports of tender points, full strength and range of motion in her arms and legs. Even in fibromyalgia cases, the "medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir 2001); *see also Tarpley v. Colvin*, 601 F. App'x 641, 643 (10th Cir. 2015) ("[A]lthough the existence or severity of fibromyalgia may not be determinable by objective medical tests, . . . physical limitations imposed by the symptoms can be objectively analyzed.").

Although Plaintiff contends the ALJ's RFC analysis is "boilerplate," the opposite is true. The ALJ fully articulated reasoning for the RFC, included discussion of all relevant medical records, and included a lengthy credibility assessment. *See infra* Part II.B. Further, the ALJ did not rely on an "absence of evidence" in only limiting Plaintiff to light work in the RFC. *Cf. Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993) (reversing where ALJ's finding that claimant could do full range of light work was supported only by the "absence of contraindication" in the medical records). In this case, the ALJ relied on two CEs by Dr. Gourd and Dr. Doty in formulating the RFC, both of whom found no abnormal physical limitations and both of which are consistent with the RFC. *See* R. 504-511; 513-516. Plaintiff's arguments are an invitation for the Court to reweigh the ALJ's well-reasoned decision, which the Court declines to do. *See Hackett*, 395 F.3d at 1172 (explaining that court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner); *White*, 287 F.3d at 908 (explaining that Commissioner's decision stands so long as it is supported by substantial evidence).

## B. ALJ's Credibility Findings are Supported by Substantial Evidence[7]

This Court will not disturb an ALJ's credibility findings if they are supported by substantial evidence, because "[c]redibility determinations are peculiarly the province of the finder of fact." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (citing *Diaz v. Secretary of Health & Human Svcs.*, 898 F.2d 774, 777 (10th Cir. 1990)). Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (citing *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted)). The ALJ may consider a number of factors in assessing a claimant's credibility, including "the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). So long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 67 (10th Cir. 2012). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id.*

---

[7] Effective March 26, 2016, the Social Security Administration issued a new policy interpretation ruling governing the evaluation of symptoms in disability claims. *See* SSR16-3p; Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 (Mar. 16, 2016) (superseding SSR 96-7p; Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996)). The purpose of the new policy is to "eliminat[e] the use of the term 'credibility' from [the] sub-regulatory policy" and "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p at *1. The ALJ's decision became final on December 29, 2015 and is governed by SSR 96-7p; therefore, the Court uses the term "credibility" throughout this Opinion and Order.

Plaintiff first argues that the ALJ's "analysis simply amounted to no analysis at all." ECF No. 20 at 14. Notably, the ALJ dedicated an entire page of the decision to explaining reasons for finding Plaintiff's subjective complaints of disabling limitations inconsistent with other evidence in the record. R. 29-30. All of those reasons are linked to discrepancies between Plaintiff's subjective claims and contradictory information in the medical record. As just a few examples, the ALJ compared Plaintiff's prior 2013 hearing testimony that she required naps and struggled with insomnia with treatment reports "less than a month" before the hearing indicating her insomnia was "ok" and she did not need to nap during the day. R. 29-30. The ALJ noted that, according to her treatment notes, Plaintiff was self-medicating with THC and requested a prescription of THC pills for an upcoming employment related drug test, despite reporting that her fibromyalgia medications were controlling her symptoms. R. 30. The ALJ also noted Plaintiff had sought and received only sporadic medical treatment for her symptoms, which reduced her credibility. R. 30. The ALJ made more than adequate credibility findings and linked those findings to substantial evidence in the record. *See Thompson v. Berryhill*, 685 F. App'x 659, 664 (10th Cir. 2017) (where ALJ evaluates a claimant's subjective complaints and explains evidence he relies on, "[n]othing more is required" for a credibility analysis).

Plaintiff also argues that the ALJ's assessment of Plaintiff's husband's third-party function report is not supported by substantial evidence. ECF No. 20 at 13-14. The Court finds no error or basis for reversal. The ALJ considered the third-party function report as a statement about Plaintiff's symptoms and how they affect her activities of daily living and ability to work, as he was required to do. *See* 20 C.F.R. §§ 404.1529(a), 404.1529(c), 404.1545(a)(3), 404.1513(a)(4). The ALJ was not required to give this statement any particular weight, and the ALJ explained his reasons for limiting the weight given. Specifically, the ALJ noted the statement contained "multiple inconsistencies" with Plaintiff's function report, and the ALJ discussed certain

16

inconsistencies. R. 30-31. Further, the ALJ's discussion of possible spousal bias in providing function reports, *see* R. 31, is not improper or a basis of reversal. *See* SSR 06-03p (explaining that, in considering evidence from non-medical sources such as spouses, "it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence").

In sum, the ALJ conducted an extremely thorough credibility analysis; provided at least six examples of inconsistencies between testimony and the record evidence; and linked these findings to substantial evidence in the record. Plaintiff has failed to identify any reversible error in relation to the ALJ's credibility analysis.

## IV. Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 18th day of March, 2019.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**